THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY
A. FINNEGAN, Respondent, v. JAMES E. McBRIDE et al.,
Composing the Civil Service Commission of the City
of New York, Appellants.

Civil service — determination of civil service commission in
establishing an eligible list for promotion — functus officio —
commission may cancel such list for fraud and illegality —
mandamus — action of commission may be reviewed by
mandamus.

1. The determination of a civil service commission establishing
an eligible list for promotion is neither judicial nor quasi-judicial in its
character and the commission is not bound by the rule that inferior
judicial tribunals or quasi-judicial officers or non-judicial officers of a
special and limited jurisdiction may not correct their own errors.

2. The action of the commission, had with due deliberation upon
such a matter as the establishment of an eligible list, should be regarded
as a finality, but the commission's authority thereon does not wholly
cease.   Error may be corrected by setting it aside if it was the result
of illegality, irregularity in vital matters, or fraud, but the commission
may not act arbitrarily.   Further action must, where power is not
entirely spent, be for cause, with good reasons and proper motives for
the correction of improper action.   The remedy by mandamus is
appropriate for the review of its action.

3. The civil service commission of the city of New York canceled
an eligible list of supervising nurses upon the ground that gross
irregularities were permitted to creep into the matter of the examina-
tion.   In fact no such irregularities appear.   Hence the clear legal
duty of the commission, having once established the list, was to
continue it in existence.

People ex rel. Finnegan v. McBride, 185 App. Div. 482, affirmed.

(Argued April 9, 1919; decided April 22, 1919.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
December 6, 1918, which affirmed an order of Special
Term granting a motion for a peremptory writ of man-
damus to compel defendants to certify to the commis-

sioner of health of the city of New York a single eligible list for promotion to the position of supervising nurse.

*William P. Burr,* Corporation Counsel (*Terence Farley* and *William E. C. Mayer* of counsel), for appellants. The examination held on November 27, 1917, was illegal and void for the reason that it was conducted in violation of the civil service rules and regulations. (*Osterhoudt v. Rigney,* 98 N. Y. 222; *People ex rel. Smith* v. *Clarke,* 174 N. Y. 259; *People* v. *Journal Co.,* 213 N. Y. 1; *Smith* v. *Hedges,* 223 N. Y. 176; *People* v. *Sutherland,* 207 N. Y. 22; *People ex rel. McNamara* v. *Knox,* N. Y. L. J., Jan. 21, 1902.) The examination was illegally conducted for the further reason that the so-called " supervising nurses " were permitted to rate not only the seniority records of the regular nurses, who were supposed to be under their supervision, but also their own records. The general rule that officers of special and limited jurisdiction cannot sit in review of their own orders or vacate or annul them has no application to the present situation. (*People ex rel. Hotchkiss* v. *Supervisors,* 65 N. Y. 222; *Matter of Bell* v. *Webb,* 4 App. Div. 614; *People ex rel. Francis* v. *Cahill,* 5 App. Div. 570; 158 N. Y. 708; *Adams* v. *Town of Wheatfield,* 46 App. Div. 466; *People ex rel. Lawrence* v. *Supervisors,* 48 App. Div. 428; *Matter of Weeks,* 97 App. Div. 131; *Matter of Weeks,* 106 App. Div. 45; *State ex rel. M. E. E. L. & P. Co.* v. *City of Minden,* 84 Neb. 193; *People ex rel. Caldwell* v. *Saratoga County,* 45 App. Div. 42; *People ex rel. Lawrence* v. *Delaware County,* 48 App. Div. 428.)

*Charles D. Newton,* Attorney-General (*James S. Y. Ivins* of counsel), for State Civil Service Commission, intervening.

*Samuel H. Ordway* and *Henry W. Hardon* for Civil Service Reform Association, intervening. The construc-

tion of the Civil Service Law in regard to the points involved in this case, as shown by the uniform practice of the civil service commissions of the state and cities, is contrary to the rules laid down by the lower courts. (*Bullock* v. *Cooley*, 225 N. Y. 566; *La Roque* v. *United States*, 239 U. S. 62, 64.) The promotion examination held in November, 1917, was illegal, for the reason that it was conducted in violation of the civil service rules, which have the force of law, and is null and void, and no court should reinstate the same. (*Hale* v. *Worstell*, 185 N. Y. 247.) The examination was irregular, if not fraudulent, for the reason that some of the candidates were permitted to rate a part of the examination papers of other candidates, and this fact in itself, in addition to the facts covered by the last point, which show that the examination was illegal as being contrary to the requirements of rule XV, justified the municipal commission in setting aside and canceling the examination and the eligible list, and it had power to do so. (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Simons* v. *McGuire*, 204 N. Y. 253; *Bullock* v. *Cooley*, 225 N. Y. 566; *La Roque* v. *United States*, 239 U. S. 62; *People ex rel. Caridi* v. *Creelman*, 150 App. Div. 746.)

*John W. Collopy, Jr.*, for respondent. The civil service commission had no power after having promulgated and certified the eligible list, to revoke and cancel the same and nullify the examination. (*People* v. *Wemple*, 144 N. Y. 478; *People* v. *Gallagher*, 82 Misc. Rep. 679.) Mandamus is the proper remedy and the list should be certified as a whole. (*People* v. *Bd. Supervisors*, 85 N. Y. 323; *People ex rel. Fowler* v. *Moskowitz*, 175 App. Div. 710.)

POUND, J. The positions of nurse and of supervising nurse in the department of health of the city of New York are classified as competitive positions in the civil service of the city. The nurses in the department of

health when appointed are assigned to either one of two bureaus, one called the bureau of child hygiene and the other the bureau of preventable diseases. Prior to August, 1917, the custom had grown up in the department of health of assigning some of these nurses in both bureaus to act as supervising nurses, with supervisory powers over the other nurses and a larger salary. Apparently such nurses had been assigned to act as supervising nurses without civil service examination, promotion or otherwise. In August, 1917, the civil service commission announced that it would hold in November, 1917, a competitive examination for promotion to the position of supervising nurse, open to all of the nurses in the department who had served for a year or more.

Subdivision 20 of rule XV of the Municipal Civil Service Rules of the city of New York provides what weights shall be given to the different factors of mental tests and comparative conduct, efficiency and seniority in examinations for promotion. Prior to the examination for supervising nurse it is alleged that it was announced that the various factors in the examination should have, and that they were given, different weights from those required by said rule, although the rule, which had the force of law, was not amended, but it does not appear as a fact that the rule was thus disregarded.

The examination was held on November 27, 1917, and practically all of the nurses in the department took it. The ratings of the candidates in this examination on the subject of experience were made, in part at least, on records kept by some of the acting supervising nurses who were also candidates in the same examination, but not in contemplation of such examination. After the examination had been held, but before the eligible list had been established, complaints were made and defendants made an investigation, but afterwards the eligible list was established on March 4, 1918, divided into two parts, one for

the bureau of child hygiene and the other for the bureau of preventable diseases. Thereafter, on April 6, 1918, after further complaints, the defendants made another investigation, in which the facts were gone into more fully, and an alleged conspiracy was discovered by which a nurse who was not among the first three on the list was given an opportunity to be appointed by waivers or withdrawals of those who stood ahead of her on the list. As the result of this investigation defendants found " that gross irregularities were permitted to creep into the matter of this examination," and that " because of said irregularities, the results of said examination do not meet the requirements of the constitution, the civil service law of the State, or of the rules and regulations of the municipal civil service commission of the city of New York, adopted in accordance therewith," and thereupon the commission on April 6, 1918, " Resolved, That the promotion eligible lists of supervising nurses for the bureaus of child hygiene and preventable diseases, department of health, promulgated March 4th, be and they are hereby cancelled."

On May 15, 1918, the defendants ordered a new promotion examination for supervising nurse, and notified the nurses that such examination would be held in June, 1918.

Thereupon the relator, who was number fourteen on the list entitled bureau of child hygiene, and who if the lists were merged into one list would be twenty-third on the merged list, commenced this proceeding, in substance asking that a writ of mandamus issue requiring the defendants, as the civil service commission of the city of New York, to reinstate the old eligible lists for promotion to the position of supervising nurse in the department of health which they had theretofore canceled, and to merge the same into one list. Thereafter the Supreme Court, at Special Term, granted the relief asked for on the ground that the commission had no power

to set aside the eligible list, and, if it had the power, was not justified on the facts in taking such action.

On appeal by the defendants to the Appellate Division, the final order made below was affirmed by a divided court on the ground that the commission, being a body of limited jurisdiction, was *functus officio* and had no power to revoke a list which it had once promulgated.

That the establishment of an illegal list sanctifies it in the presence of its own creator seems an impotent conclusion. The determination of the civil service commission was neither judicial nor quasi-judicial in its character and the commission was not bound by the rule that functions of inferior judicial tribunals or of quasi-judicial officers terminate with the entry of judgment and may not afterwards be altered or varied in any respect by the tribunal itself. For a short period of time it was held that the civil service commission acted quasi-judicially (*People ex rel. Sims* v. *Collier*, 175 N. Y. 196), but this court candidly retracted the views expressed in the *Sims* case in *People ex rel. Schau* v. *McWilliams* (185 N. Y. 92), where it was held that the ordinary determinations of the commission, although involving the exercise of judgment, are neither judicial nor quasi-judicial, for the reason that they are not based on a trial or judicial hearing before the commission which may be reviewed by certiorari. In *Matter of Simons* v. *McGuire* (204 N. Y. 253, 257), WERNER, J., said: "The trend of the earlier cases reached its logical culmination in *People ex rel. Sims* v. *Collier* (175 N. Y. 196), where it was held that the duty of classification under the Civil Service Law was quasi-judicial in its nature and was, therefore, not reviewable by mandamus but by certiorari as in other cases involving judicial functions. This was in 1903. Three years of experience under that decision demonstrated that this court had in effect assumed the functions of the civil service commissioners, for every

17

challenged decision of these officers was brought to
this court as a question of law.   The case of *People ex rel.
Schau* v. *McWilliams* (185 N. Y. 92), which came to us in
1906, very pointedly presented the unfortunate tendencies
of our decision in the *Sims* case, and after mature delibera-
tion we decided to retract our earlier views and held that
the determination of a civil service commission in classify-
ing positions in the public service, *although involving
the exercise of judgment and discretion, is more of a legis-
lative or executive character than judicial or quasi judicial.*"

The commission proceeded with judicial forms to
investigate the charges that the examination for super-
vising nurse was irregular, but there was no trial or judicial
hearing before the commission.   Its action is sought to
be reviewed, not by certiorari, which is appropriate to
the review of a judicial act, but by mandamus which is
appropriate to the review of administrative acts.   The
rule which forbids the re-opening of a matter once
judicially determined by a competent inferior tribunal
does not apply.   As was said in *People ex rel. Hotchkiss*
v. *Bd. Supervisors Broome Co.* (65 N. Y. 222, 225):
" There is no substantial reason for hampering such a
body, in its power to correct its own errors and to do
right, by applying to it the technical rules which pertain
to Justices' Courts, and other inferior judicial tribunals,
supposed to proceed according to the course of the com-
mon law, and whose mere errors can only be corrected
by a direct proceeding in review."

Neither does the general rule apply that non-judicial
officers of a special and limited jurisdiction, having power
to do a certain act, may not vacate their own orders. (*Peo-
ple ex rel. Hotchkiss* v. *Bd. Supervisors, supra,* p. 227; *People
ex rel. Chase* v. *Wemple,* 144 N. Y. 478, 482.)   The action
of the commission, had with due deliberation, upon such
a matter as the establishment of an eligible list, should,
for obvious reasons, be regarded as a finality, but the
commission's authority thereon does not wholly cease.

It certifies names therefrom for appointment. Error may be corrected by setting it aside if it was the result of illegality, irregularity in vital matters, or fraud. The commission may not act arbitrarily. Public officers or agents who exercise judgment and discretion in the performance of their duties may not revoke their determinations nor review their own orders once properly and finally made, however much they may have erred in judgment on the facts, even though injustice is the result. A mere change of mind is insufficient. Further action must, where power is not entirely spent, be for cause, with good reasons and proper motives for the correction of improper action. The commission has life and power to vacate a list which has no legal virtue whatsoever.

It is impossible to say that the action of the commission in annulling the eligible list in the case before us was due to anything more serious than a response to criticism of the rating of the contestants and dissatisfaction with an attempted juggling with the list after it had been established, whereby, through waivers obtained from those at the head of the list, candidates were pushed up where they would be certified for appointment in advance of their turn. The dissatisfaction thus expressed does not appear to be due to any illegal action of the commission. Correction of the abuse of waivers — an abuse which may result in the entire thwarting of the merit system through official pressure upon candidates to yield their prior claims to certification to one more favored by the appointing power — must be sought elsewhere. The commission may not decide for itself, for the purpose of vacating an eligible list, that " gross irregularities were permitted to creep into the matter of the examination." Where no such irregularities appear, the declaration of the commission that they exist does not create them. Here we have no proof that ratings were made contrary to the rule which fixed the relative weights of mental tests and experience, but only a hearsay charge to that effect.

The incident that some efficiency records were kept by nurses who afterwards entered the examination, while not commendable, was not, under the circumstances, a serious irregularity, nor one which resulted in an improper rating of any candidate. The clear legal duty of the commission, having once established the list, was to continue it in existence as a single list for the period fixed by law, or by rule having the force of law.

The order appealed from should, therefore, be affirmed, with costs.

HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO, McLAUGH-LIN and ANDREWS, JJ., concur.

Order affirmed.