Matthew M. Levy, J.
The petitioner is a practicing psychologist. She lives and labors in an apartment she occupies on the seventh floor of 41 Fifth Avenue, in Manhattan. She brings this proceeding (Civ. Prac. Act, art. 78) to review the determination of the State Rent Administrator that the apartment is exempt from residential rent control as long as the professional use thereof continues.
The petitioner originally became an occupant of the premises in 1937. The unit then consisted of three rooms, wherein the petitioner resided and conducted a full-time practice of her profession. During 1949, a fourth room was added from the adjoining unit. At the time of such addition, the petitioner had been paying $97.50 per month for the three-room unit, and she agreed to pay a rental of $150 per month for the enlarged apartment. In March, 1952, she signed a lease with her then landlord providing for continued occupancy of the four-room apartment at the rental of $150 per month. This lease contained a statement that the premises were to be used predominantly for professional purposes. An accompanying affidavit, signed by the tenant, contained a similar statement, and a further one to the effect that the reasonable value of the professional portion of the apartment is clearly in excess of the value of the dwelling portion.
In April, 1956, the petitioner filed a statement of violations at the local rent office alleging rental overcharges. That proceeding was terminated in September, 1956, when a determination was made by the Local Rent Administrator that the ‘1 [s]ubject unit is being used for professional purposes. Therefore, unit is not subject to the Rent and Eviction Regnlations so long as subject tenant remains in occupancy.” The tenant did not protest that decision. The determination now before me for review is based upon a proceeding instituted in April, 1958 before the State Rent Commission, when the tenant filed an application requesting the fixation of a maximum legal rental *336 for the four rooms. The Local Bent Administrator processed this application de novo, conducting a conference with the parties and a physical inspection of the apartment. Such inspection revealed that the apartment consists of an 11-foot by 5-foot kitchen, an 18-foot by 11-foot bedroom (both of which are used solely for residential purposes), a 20-foot by 12-foot living room (used occasionally as a waiting room) and an 18-foot by 11-foot conference room. The tenant’s profession involved her counsel-ling about a' half .dozen or so persons, usually children, each day, whom she interviewed at the apartment for some 50 minutes each. These visitors, of course, used the building lobby, elevators and hallway leading tó and from the apartment. The tenant’s entire professional income has been and still is being derived from the practice of her profession in this apartment. In April, 1959, the Local Bent Administrator issued an order determining that the subject housing accommodations are exempt from regulation so long as the' commercial or professional use thereof shall continue. In May, 1959, the State Bent Administrator affirmed the order of the Local Administrator, stating in part: “ Under Administrator’s Opinion No. 115 (formerly Administrator’s Opinion No. 34), the test to be applied to the subject apartment is whether the predominant part of the total space is used for residential or professional purposes and whether the rental value of the professional space is clearly in excess of the rental value of the residential space. Although the report of physical inspection does not clearly indicate that the professional portion of the subject apartment is a predominant part of the total space, since the living room has a combined residential and professional use, the record does indicate that the rental value of the professional portion exceeds that of the residential portion.”
This brings to the fore the effect of the so-called ‘1 Administrator’s Opinions.” In June, 1950, the State Bent Administrator inaugurated the policy of publishing official “ Administrator’s Opinions ” dealing with problems of general applicability. While it may be suggested that these ‘1 Opinions ’ ’ do not have the legal force of ‘1 Bules and Begulations ’ ’ promulgated by the Administrator pursuant to statutory authorization (State Besidential Bent Law, § 4, subd. 4, par. [a], subds. 6, 7; L. 1946, ch. 274, as amd.), I am of the view that the Administrator should —unless good cause be shown otherwise in the facts involved in any particular case — follow the criteria established by his own official general opinions. It will be well, therefore, to quote in full the opinion cited by the Administrator in his determination of the instant case:
*337 ‘‘ Where the business and dwelling portions are rented to a single tenant, but are not separable, then both portions have a single combined status determined in accordance with the following rules:
“ (1) If a predominant part of the total space is used for business purposes, the property is not subject to the Regulations.
“ (2) Where less than a predominant part of the total space is used for business purposes (and also where the space test cannot be used because there is no physical segregation of the space used for business purposes and that used for dwelling purposes) but the rental value of the business portion (or of the business use where the two uses are not physically segregated) is clearly in excess of the rental value of the dwelling portion, the property is not subject to the Regulations.
“ (3) If less than a predominant part of the total space is used for business purposes, and the rental value of the business portion (or business use) does not clearly exceed the rental value of the dwelling portion (or dwelling use), the entire property is subject to the Regulations.” (Op. State Rent Administrator, No. 115.)
A study of the record presented on this submission discloses that the Administrator failed in this case to adhere to the standards he himself has formulated — a fact which becomes readily apparent upon an analysis of the holding here as compared with Opinion No. 115. The Administrator found that the professional portion did not ‘1 clearly ’ ’ exceed the residential portion of the total rented space. It is not necessary, in the view I take of this case, for me to decide that the proof in that regard must be so plain. But this much I do hold — that it does not suffice for the Administrator to find merely that the record “ indicates ” that the rental value of the professional space exceeds the rental value of the residential space. In that regard, the Administrator’s general opinion obviously requires proof more conclusive — the rental value of one use must be “ clearly in excess ” of that of the other use. The determination made here falls because of the lack of foundation in this respect. This distinction is not, as I see it, in the present context and taking the text of the Opinion No. 115 as a whole, a matter merely of semantics, but rather one of the required measure and stipulated quality of proof. (Cf. Fisch, New York Evidence, § 1090.)
Moreover, although the order of the Administrator stated that “ the record does indicate that the rental value of the professional portion exceeds that of the residential portion”, it appears from the papers submitted that no proof whatsoever was adduced, at any time, as to comparative rental values. *338 Neither the respondent Administrator nor the landlord intervener has factually refuted the allegations contained in paragraphs 26 and 28 of the tenant’s petition, which stated, in substance, that no evidence whatsoever was offered, given or adduced as to rental value, and that, had evidence been requested or a hearing held to obtain proof in that regard, such evidence would show that the value of the professional portion is not at all in excess of the value of the residential portion of the premises.
It is urged that the prior proceedings precluded the Rent Commission from going into the matter. I do not agree. No doubt, a judgment in one action is conclusive in a later one, not only as to any matter actually litigated in the first suit, but also as to any that might have been there litigated (Wille v. Maier, 256 N. Y. 465; Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304). And it is true that the principle of res judicata applies to administrative bodies as well as to judicial tribunals (Matter of Evans v. Monaghan, 306 N. Y. 312). But it has been aptly said that “mechanical application of common-law rules will not promote reasonable decision in cases controlled by emergency rent legislation ” (Matter of Park East Land Corp. v. Finkelstein, 299 N. Y. 70, 75), and, in my view, assuming that the effect of a prior determination is not based upon a precept of substance but is a procedural device, the caveat applies as well to rules of procedure. The precedent relied upon by the respondent and intervenor (Matter of Neri v. Temporary State Housing Rent Comm., 7 Misc 2d 24, 27) is not applicable on the instant record or in the present circumstances. For, significantly enough, there is no claim that, in the prior proceeding, evidence was submitted of the rental value of the professional portion or that it exceeded that of the dwelling portion. It would thus appear that the prior determination, based as it was upon an incomplete record, was the result of an irregularity in a vital matter (People ex rel. Finnegan v. McBride, 226 N. Y. 252, 259), and, therefore, that it does not have the conclusive effect claimed for it (cf. Matter of Breeding v. Weaver, 13 Misc 2d 417, 421; see, also, Matter of 609 Holding Corp. v. McGoldrick, 204 Misc. 26, 31).
It is urged, in support of the determination, that the statements in the lease of March, 1952, and in the accompanying affidavit, made by the tenant, estop her from asserting that the apartment use is not predominantly professional. It is my opinion that, absent any evidence to support such conclusions, the statements are without binding force or effect. A tenant may not waive his rights under the Emergency Rent Laws (State *339 Bent and Eviction Begulations, § 16), and the salutary purpose of these statutes would be defeated by permitting such a subterfuge to frustrate the protection afforded tenants by these laws. Moreover, on that issue of the case, the tenant stated that, having occupied the premises since 1937 for residential and professional purposes, she signed the lease and affidavit in 1952 because of misrepresentations by the then landlord, and that these documents were obtained from her in a purposeful attempt to deprive her of the protection of the rent control laws. It does not appear that the issues thus raised were resolved by the respondent. The case of Vojda v. Prizep (280 App. Div. 287) cited by the respondent, is clearly distinguishable. In that case, a tenant, entering into possession for the first time, signed a lease which provided that the apartment was to be used for business purposes. That is not the situation in the matter presently under review.
It is urged by the intervenor that the landlord had obtained several hardship rent increases in appropriate proceedings before the Bent Commission (State Bent and Eviction Begulations, § 33, subd. 5), and that this petitioner had not become subject thereto because she was considered the occupant of an apartment in commercial rather than residential use, and that therefore she is not entitled to disclaim a predominantly professional use now. I do not see that it was incumbent upon the tenant to answer or contest those proceedings so as to compel the .owner to recognize her status as a residential occupant and thus be entitled to the doubtful privilege of being permitted to pay the rent increases demanded or awarded. As there was no duty to speak, the tenant’s silence cannot be deemed an invulnerable concession under the rent control laws.
The matter is remanded to the respondent for further consideration and action not inconsistent with this opinion. Order signed.